No. 25-2635

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

Edmond M. Butch, Charles R. Wyatt, Daniel A. Henry, and Robert H. Crow, *on behalf of themselves and all persons similarly situated*; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC; and Aluminum Trades Council of Wenatchee, Washington AFL-CIO,
**Plaintiffs-Appellees,**

v.

Alcoa USA Corp.; Retirees Group Benefits Plan for Certain Hourly Employees of Alcoa USA Corp.; and Optional Life Insurance Plan,
**Defendants-Appellants.**

Appeal from the U.S. District Court for the Southern District of Indiana (Hon. Richard L. Young), Case No. 3:19-cv-258-RLY-CSW

# RESPONSE BRIEF OF PLAINTIFFS-APPELLEES IN
# OPPOSITION TO ALCOA'S MOTION TO STAY INJUNCTION

Joel R. Hurt
    *Counsel of Record*
Ruairi McDonnell
**FEINSTEIN DOYLE PAYNE
    & KRAVEC, LLC**
Law & Finance Building, Suite 1300
429 Fourth Avenue
Pittsburgh, PA  15219
Telephone:  412-281-8400

*Counsel for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................ii

I.    INTRODUCTION.......................................................................... 1

II.   BACKGROUND ............................................................................ 1

III.  LEGAL STANDARD ..................................................................... 8

IV.   ARGUMENT ................................................................................ 8

    A.  Alcoa has no likelihood of success as to the Company-paid
       life insurance. ...................................................................... 8

       1.  Alcoa's reliance upon the "general rule" announced
          in *Stone v. Signode* is misplaced............................................. 8

       2.  Alcoa's interpretation of the language of the 2019
          CBA and incorporated Retiree Life SPD is
          unreasonable. ...................................................................... 10

          a.  Alcoa's interpretation of the Retiree Life
             SPD is absurd. ................................................11

          b.  Alcoa's interpretation of the 2019 CBA
             language fails too............................................18

    B.  Alcoa has no likelihood of success as to Voluntary
       life insurance .......................................................................21

    C.  The remaining factors do not favor a stay. .............................24

V.    CONCLUSION .............................................................................25

CERTIFICATE OF COMPLIANCE WITH WORD COUNT AND
TYPEFACE REQUIREMENTS.............................................................27

CERTIFICATE OF SERVICE................................................................28

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate
Glass Co.*,
    404 U.S. 157 (1971) ........................................................................ 9, 19

*Beanstalk Grp. v. Am Gen. Corp.*,
    283 F.3d 856 (7th Cir. 2002) ............................................................ 18

*Campos v. Cook Cty.*,
    932 F.3d 972 (7th Cir. 2019) ............................................................ 25

*Cavel Int'l, Inc. v. Madigan*,
    500 F.3d 544 (7th Cir. 2007) .............................................................. 8

*Diehl v. Twin Disc*,
    102 F.3d 301 (7th Cir. 1996) ................................................. 20-21, 22

*Dispatch Automation, Inc. v. Richards*,
    280 F.3d 1116 (7th Cir. 2002) .......................................................... 14

*Hughes v. Sw. Airlines Co.*,
    961 F.3d 986 (7th Cir. 2020) ............................................................ 14

*Mastro Plastics Corp. v. NLRB*,
    350 U.S. 270 (1956) .......................................................................... 11

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................. 1, 8, 24

*Rossetto v. Pabst Brewing Co.*,
    128 F.3d 538 (7th Cir. 1997) ............................................................ 19

*Stone v. Signode Indus. Grp. LLC*,
    943 F.3d 381 (7th Cir. 2019) ................................................. 9, 21, 24

*Taracorp v. NL Indus.*,
    73 F.3d 738 (7th Cir. 1996) .............................................................. 15

*UAW v. Rockford Powertrain, Inc.*,
    350 F.3d 698 (7th Cir. 2003) ................................................. 12, 18, 23

*UMW v. Brushy Creek Coal Co.,*
  505 F.3d 764 (7th Cir. 2007) ........................................................ 24

*United Steelworkers of Am. v. Am. Mfg. Co.,*
  363 U.S. 564 (1960) ...................................................................... 20

*Winston-Salem/Forsyth Cty. Bd. of Educ. v. Scott,*
  404 U.S. 1221 (1971) ................................................................. 1, 8

*Zielinski v. Pabst Brewing Co.,*
  463 F.3d 615 (7th Cir. 2006) ....................................................... 22

## I.    INTRODUCTION

Below, the District Court found that Alcoa breached its unambiguous collective bargaining agreements ("CBAs") when it terminated retiree life insurance. The District Court then directed the company to reinstate that coverage and pay the death benefits it owes. Alcoa now asks this Court to stay that injunction pending appeal, arguing that it never agreed to provide retirees anything beyond the term of the CBA in effect when they retired. But a stay pending appeal is "extraordinary relief," and Alcoa bears a "heavy burden" in justifying one. *Winston-Salem/Forsyth Cty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971). And here, because it can demonstrate *no* likelihood of success on appeal—much less the requisite "strong" likelihood, *see Nken v. Holder*, 556 U.S. 418, 434 (2009)—the company cannot carry that burden. Alcoa's stay request should be denied.

## II.    BACKGROUND

Effective December 31, 2019, Alcoa eliminated the life insurance it had long provided to hourly employees who retired before the September 19, 2019, when the then-current "Master Agreement" (the "2019 CBA") took effect. Alcoa's Stay Motion (hereinafter "Motion") at pp. 4-5;

MSA.045, MSA.061. In response, Plaintiffs sued, alleging that the company had breached its CBAs. D.Ct. ECF No. 1.

After some discovery, the District Court certified, with respect to Company-paid insurance, a "Main Class" of individuals who retired on or after June 1, 1993 from 26 Alcoa facilities, most of which were closed or sold. D.Ct. ECF No. 117 at p. 22. The District Court also certified a smaller "Subclass" who, for more than 40 years, had been paying monthly premiums for additional Voluntary insurance. *Id.* at p. 23; MSA.036.

Following completion of fact discovery, the parties cross-moved for summary judgment in the summer of 2023. Motion at p. 5. For the claim for Company-paid insurance, Plaintiffs contended that Alcoa breached the 2019 CBA and remained in breach of the 2023 CBA negotiated during the litigation which carried forward the 2019 CBA's relevant terms. MSA.045, MSA.061; Motion at p. 4. In support, they pointed to contract language which guaranteed Company-paid life insurance to the Main Class during the term of the CBAs in effect at the time Alcoa terminated that coverage, and which was the *same* as the contract language which likewise guaranteed medical and prescription drug coverage to the Main Class during that same period.

For starters, no one disputes that under a letter agreement titled "Retiree Health Care," Alcoa was obligated under the 2019 CBA to provide health benefits to the retirees in the Main Class, all of whom retired before the effective date of the 2019 CBA. MSA.016-024. That letter has its genesis in the 1993 negotiations of a future "Cap" on the company's spending for the health coverage for post-June 1, 1993 retirees' from numerous locations, most of which have since closed or been sold. D.Ct. ECF No. 172 at 27-29; MSA.048-053. The Cap agreement was first memorialized in a letter in the 1993 CBAs barring Alcoa from implementing the Cap until after the CBAs expired, and was carried forward until the parties agreed in 2006 to implement the Cap, when it turned into the version found now in the 2019 CBA. *Id.* Thus, ever since the 1993 Cap negotiations, post-June 1, 1993 retirees have been guaranteed health benefits under the then-current Master Agreement CBA/s. *Id.*

With that context in mind, note that the "Group Insurance" provision in the 2019 CBA says that medical, prescription drug, and life insurance must be provided to both "eligible active employees" and "eligible retirees." MSA.012. Plaintiffs argued that since the "Group

Insurance" provision says that "retirees" will get health *and* life insurance, and since the Retiree Health Care Letter makes clear that the retirees entitled to health insurance are those in the Main Class, this means that the Main Class was entitled under the 2019 CBA to Company-paid life insurance too. D.Ct. ECF No. 169 at 26.

That's not all. The "Group Insurance" provision in the 2019 CBA also states that "[s]eparate booklets describing these benefits are incorporated herein and made a part of this Agreement." MSA.012. Those "separate booklets" are ERISA summary plan descriptions ("SPDs"), Motion at p. 4; among them the "Retiree Life Insurance Summary Plan Description Master Agreement Plan" (hereinafter, the "Retiree Life SPD"). MSA.072. The Retiree Life SPD was applicable when Alcoa terminated life insurance. D.Ct. ECF No. 55 at 9 (¶ 41). And it explicitly provides Company-paid life insurance for the Main Class. First, the Retiree Life SPD contains a table showing five different benefit amount tiers for those that retired on or after June 1, 1993, based on the dates that they retired. MSA.078. Second, another table explains that post-June 1, 1993 retirees from the 26 facilities from which Main Class members retired were eligible for the "plan as described in this booklet[.]"

MSA.081-082. And the SPD also says in a "Future of the Plan" provision that "[t]he plan described in this booklet is provided *for the term of the collective bargaining agreement*[.]" MSA.088 (emphasis added). Therefore, the Retiree Life SPD incorporated into the 2019 CBA unambiguously guaranteed Company-paid life insurance to the retirees in the Main Class at the time Alcoa terminated those benefits. D.Ct. ECF No. 169 at 26-33.[1]

Moreover, the Retiree Life SPD is essentially identical to the "Retiree Health Care Benefits Agreement Summary Plan Description Master Agreement Plan" (the "Retiree Health SPD"). RA01-77 (One wouldn't know the Retiree Health SPD exists from reading Alcoa's motion; Plaintiffs have filed it with this response.) The Retiree Health SPD, like the Retiree Life SPD, contains a table explaining that the post-June 1, 1993 retirees in the Main Class were eligible for the "plan as described in this booklet[,]" *id*. at RA.058, as well as a "Future of the Plan" provision stating that the "benefits described in this booklet are provide for the term of the collective bargaining agreement[.]" *Id*. at

---

[1] The parties explicitly agreed to republish the Retiree Life SPD in 2023. D.Ct. ECF No. 169-25 at 53.

RA.069. Both Retiree SPDs were negotiated documents modeled on the then-existing SPDs for active employees and issued in 2013 during the term of the parties' 2010 Master Agreement CBAs with an Alcoa cover letter identifying both as "Agreement[s]." MSA.053-055 (¶¶ 24-29); ECF No. 169-18; ECF No. 169-12; ECF No. 169-14. (While the premiums in the Retiree Health SPD later changed during negotiations in 2014 and 2019, during those negotiations there were *no* changes to Company-paid life insurance, and the parties agreed that the existing CBAs would continue "unchanged" if not modified. MSA.056-058 (¶¶ 30-32, 37-39).) The point being, since the Retiree Health SPD described the benefits for the Main Class under the Retiree Health Care Letter in the then-current CBA, and since the language of the Retiree Life SPD is the *same* as that in the Retiree Health SPD, the Retiree Life SPD must unambiguously grant Company-paid life insurance during the term of the current CBA too.

Plaintiffs' claim with respect to Voluntary life insurance (which is not described in the Retiree Life SPD, MSA.076) is different; they alleged that Alcoa breached the CBAs in effect when Subclass members retired. The 1993 and 1996 Master Agreement CBAs incorporated active

employee SPDs that said that upon retirement, Voluntary life insurance coverage would be "continued for life[.]" MSA.026-027, 036-38, 048-050 (¶¶ 8-10, 12); D.Ct. ECF No. 169 at 34-35. And while that language was not in subsequent active employee SPDs, the parties never changed their agreement that Voluntary life insurance would be "continued for life" after retirement, and thus it persisted as an implied term. MSA.050-059 (¶¶15-17, 21-22, 24-27, 30-31, 35-36, 38-39); D.Ct. ECF No. 169 at 36-37.

As will be examined below, Alcoa's position regarding both types of insurance is the same: a retiree is only entitled to life insurance for the term of the CBA in effect when he or she retires. D.Ct. ECF No. 172 at 8. And since all impacted retirees retired before the effective date of the 2019 CBA, in Alcoa's view there was no breach. *Id.* at 23.

The District Court ruled in Plaintiffs' favor. MSA.095-129. It found that the 2019 and 2023 CBAs unambiguously granted Company-paid benefits for the duration of those CBAs to the Main Class. MSA.105-113. It also found that the 1993 agreements unambiguously granted lifetime benefits to the Subclass, noting that Alcoa conceded that it never subsequently bargained to change the scope of those benefits. MSA.113-

122. The District Court directed Alcoa to reinstate coverage and pay benefits to the beneficiaries of retirees who had died. MSA.148-150.

## III.  LEGAL STANDARD

A stay pending appeal is "extraordinary relief" and the party seeking one bears a "heavy burden." *Winston-Salem*, 404 U.S. at 1231. The Court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434.

## IV.  ARGUMENT

### A.  Alcoa has no likelihood of success as to the Company-paid life insurance.

Alcoa offers a number of reasons why the District Court's decision as to Company-paid insurance was wrong. But because Alcoa's "appeal has no merit at all[,]" its stay request "should of course be denied." *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007).

#### 1.  Alcoa's reliance upon the "general rule" announced in *Stone v. Signode* is misplaced.

Tellingly, Alcoa's primary attack on the District Court's ruling is

not grounded in the contractual language. Instead, Alcoa repeatedly invokes the holding from *Stone v. Signode Indus. Grp. LLC*, 943 F.3d 381, 388 (7th Cir. 2019) that as a "general rule" a CBA "covers only those who retire while it is still in effect." *See* Motion at pp. 1, 12-21. Alcoa infers from this that a CBA generally does *not* cover those who retired *before* it went into effect and argues that the District Court "flouted" *Stone*. *See id.* at p. 17.

There are two problems with this argument. The first is that when *Stone* held that "[a]s a general rule, [a CBA] covers only those who retire while it is still in effect," it was making the point that CBAs generally do not cover employees retiring *after* the CBA ends, not that CBAs do not generally cover employees who retired before the CBA took effect. *See* 943 F.3d at 388. But the bigger problem is that general rules have exceptions, and even if CBAs *generally* do not grant benefits to those who retired before the CBA became effective, a.k.a. "current retirees," it is well accepted that they *may* do so. *See Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971). Thus, there is no reason to *presume*, as Alcoa urges, that the 2019 CBA does not provide life insurance to current retirees, particularly where it is

undisputed that the CBA provides them health benefits.

### 2. Alcoa's interpretation of the language of the 2019 CBA and incorporated Retiree Life SPD is unreasonable.

On to the contractual language. As it did on summary judgment, Alcoa argues that when the 2019 CBA's "Group Insurance" provision speaks of "retirees," it means Warrick and Massena employees who would retire during the CBA's term, or, "future retirees." Motion at pp. 13-14. In support, Alcoa points to the CBA's "Recognition" provision which states "[t]he provisions of this Agreement shall apply solely to those employees" at Warrick and Massena "for whom the Union has been certified as the exclusive bargaining agency by the National Labor Relations Board, or for whom the Company has recognized the Union as the exclusive bargaining agency." *Id.* (citing MSA.009).

As for the Retiree Health Care Letter, Alcoa claims it is merely an exception (or "asterisk") to the "Recognition" provision. *Id.* at pp. 14-15. In fact, implicitly relying upon the *expressio unius est exclusio alterius* principle, Alcoa claims that the letter shows that had the parties intended to provide Company-paid life insurance to current retirees, they would have done so in an "analogous life-insurance letter[,]" *id.* at pp. 13-

15, and that if the word "retirees" in the "Group Insurance" provision meant current retirees, then the Retiree Healthcare Letter would be superfluous. *Id.* at p. 16.

Finally, Alcoa does not dispute that the 2019 CBA incorporates the Retiree Life Insurance SPD. *Id.* at pp. 18-19. However, Alcoa contends, as it did before the District Court, that it is only incorporated into the 2019 CBA for those who would retire during its term, while for the retirees in the Main Class, it was incorporated into the expired CBA in effect when each of them retired. *See id.* at pp. 18-21.[2]

Unfortunately for Alcoa, when one reads the parties' 2019 CBA *as a whole*, *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279 (1956), the company's interpretation is unreasonable, as the District Court held. Thus, Alcoa's interpretation cannot reveal even an *ambiguity* in its favor.

### a.  Alcoa's interpretation of the Retiree Life SPD is absurd.

We start with Alcoa's reading of the incorporated Retiree Life SPD.

---

[2] Alcoa misleadingly asserts in the "Background" section that it "exercised its 'right to amend or terminate'" class members' life insurance benefits "in whole or in part at any time." Motion at p. 5 (quoting MSA.070). But the so-called "right" Alcoa presupposes exists is written *nowhere* other than the same non-negotiated December 31, 2019 Plan Amendment document in which Alcoa resolved to terminate benefits. MSA.070.

As an initial matter, nothing in the 2019 CBA says that that SPD—which again, describes an ongoing plan which covers the retirees comprising the Main Class and is provided "for the term of the collective bargaining agreement"—is incorporated for some retirees but not others. Much as Alcoa might wish it were otherwise, the incorporation of the Retiree Life SPD into the 2019 CBA "requires the incorporation of all clauses contained in the plan description." *See UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 704 (7th Cir. 2003).

In addition, before moving on we must ensure that Alcoa's argument about the Retiree Life SPD is understood in its full context. In its motion, Alcoa focuses solely on the Retiree Life SPD. But before the District Court, faced with the fact that the language in the Retiree Life SPD mirrored that in the Retiree Health SPD, Alcoa argued that *both* SPDs were incorporated into the *expired* CBAs that were in effect when retirees in the Main Class retired. D.Ct. ECF No. 172 at 32-37; ECF No. 239 at 16-17. This reading is not just at odds with the language in the SPDs, it makes absolutely no sense.

To wit, the Retiree Health SPD describes benefits "effective January 1, 2011," and premiums through 2014, when the 2010 CBAs in

effect when the Retiree SPDs were issued would expire. RA.004, RA.009. If the "benefits described in this booklet" were not effective until 2011, they obviously could not be "provided for the term" of CBAs that were expired *before* 2011. Indeed, the entire purpose of the Retiree Health Care Letter was to describe *capped* health benefits for post-1993 retirees which became capped following the 2006 negotiations; it would be preposterous for the Retiree Health SPD to be retrospectively incorporated into pre-2006 CBAs that expressly stated that the cap could *not* take effect during their terms. *See* D.Ct. ECF No. 172 at 27-29.

The Retiree Life SPD likewise cannot bear Alcoa's strained interpretation. As explained, that SPD provides for tiered levels of benefits for retirees by retirement date, including for those who retire "[o]n or after 1/1/2011[.]" MSA.078. Plainly, a "plan" that provides benefits for people who retired after 2011 cannot be incorporated into and "provided for the term" of CBAs that were expired *before* that date. MSA.088.

Likewise, as discussed, both Retiree SPDs contain "Future of the Plan" provisions stating "[t]he [benefits/plan] described in this booklet [are/is] *provided* for the term of the collective bargaining agreement[.]"

*Compare* MSA.088 *with* RA.069 (emphases added). Thus, both speak of the provision of benefits in the *present* tense, which cannot be squared with Alcoa's interpretation whereby the SPDs are *retroactively* incorporated into a multitude of expired CBAs. Alcoa's interpretation also runs headlong into the fact that that the provision refers to the "agreement between the union *and Alcoa, Inc*[.]" *id.*, and for many post-1993 retirees identified therein, the CBA in effect when they retired was between their union and *Reynolds Metal Company*, which Alcoa Inc. acquired in 2000.  *See* D.Ct. ECF No. 176-3 at 3-5.

Accordingly, Alcoa's interpretation of the Retiree SPDs cannot be reconciled with their language or obvious purpose. *See Hughes v. Sw. Airlines Co.*, 961 F.3d 986, 990 (7th Cir. 2020) ("It is not our place to rewrite contracts."); *Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir. 2002) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons").

Two other points bear mentioning. First, when Alcoa created the Retiree SPDs, it used the same "Master Agreement Plan" title and "Future of Plan" provision contained in the contemporaneous active employee life insurance SPD. *Compare* MSA.072 and MSA.088 *with*

RA.002 and RA.069 *with* D.Ct. ECF No. 102-32 at 2, 50. And Alcoa has conceded that that active employee SPD was incorporated into the then-current CBA and provided benefits for its term. *See* D. Ct. ECF No. 172 at 35. Thus, by importing the same words from the active employee SPD into the Retiree SPDs, one must assume that the "same meaning" was intended. *See Taracorp v. NL Indus.*, 73 F.3d 738, 744 (7th Cir. 1996).

Second, there was a *separate* incorporated active employee life insurance SPD issued in connection with the 2019 CBA that explained the Company-paid benefits available to Warrick and Massena employees upon their retirement. D.Ct. ECF No. 173-29 at 35; D.Ct. ECF No. 172 at 26-27. As the District Court reasoned, there would be no need for the Retiree Life SPD to be incorporated into the 2019 CBA if it were only so incorporated with respect to employees who would retire during the CBA's term, as Alcoa argued, because the active employee SPD already provided employees with Company-paid life insurance benefits upon their retirement. MSA.108-109.

Alcoa largely elides all of this, instead citing a few isolated sections of the Retiree Life SPD it claims support its reading. *See* Motion at pp. 19-21. But none move the reasonableness needle for Alcoa.

For example, Alcoa cites the "Who is Eligible" section which says "You are eligible if you were [a post-1993 retiree] and covered by a [CBA] that contains this plan as part of the agreement." *See id.* at p. 20 (citing MSA.076). It also points to the "Participating Unions" section which states "You are eligible to participate in the Alcoa life insurance plan as described in this booklet if you are a retiree who, as an active employee, was covered by a [CBA] between Alcoa and one of the unions listed on the following page." *See id.* at pp. 20-21 (citing MSA.081). Alcoa says that these sentences "make[] clear that—for each individual retiree—the relevant CBA is the one that last 'covered' that individual 'as an active employee' at retirement." *See id.* at p. 20.

Not so. The "Who is Eligible" section says that a post-1993 retiree is eligible if "covered" by a CBA that makes the plan part of the CBA, but says nothing to prevent a later CBA from so "cover[ing]" them, nor does it state that a retiree is *only* "covered" by the CBA in effect at retirement. Likewise, the "Participating Unions" section says that to be "eligible" one has to be a post-1993 retiree that "*was* covered" by a CBA at one of the designated locations—which all Main Class members were—but does *not* preclude the current CBA from granting benefits to the retirees listed

- 16 -

therein. Moreover, the same language is in the Retiree Health SPD, RA.058, and we *know* that under that SPD, the covered retirees' benefits were provided under the Retiree Health Care Letter in the then *current* CBAs, not expired ones. *Compare* RA.004, RA.009 *with* D.Ct. ECF No. 102-22 at 133-141 *and* ECF No. 102-23 at 173-181.

Alcoa also focuses on language in the SPD that references multiple "agreements," including: (i) an introductory paragraph stating that the SPD "is the plan document and summary plan description (SPD) of life insurance benefits, which are incorporated in and made part of the collective bargaining *agreements* between Alcoa, Inc. and the unions listed under the 'Participating Unions' section of this booklet[,]" s*ee* Motion at p. 19-20 (citing MSA.074), and (ii) in the "Participating Unions" section, a sentence saying "[t]he plan is maintained pursuant to one or more collective bargaining *agreements*." *See id.* at p. 20 (citing MSA.082).

These sentences do not help Alcoa either. For starters, assuming that that language Alcoa cites operates to incorporate the SPD into each CBA in effect when the post-June 1, 1993 retirees from the facilities listed in the "Participating Unions" section retired, that would simply mean that the SPD is incorporated into *all* of those CBAs, which in turn would

mean that *each* of the CBAs into which the SPD was incorporated—
including the 2019 CBA—would grant benefits to *all* retirees. *Cf.*
*Rockford Powertrain*, 350 F.3d at 704. In any event, we return to the
inescapable fact that both sentences are also found in the Retiree Health
SPD, RA.004 and RA.059, and again, we know that that SPD is
incorporated into the current CBA, not a bunch of expired ones. *Cf.*
*Beanstalk Grp. v. Am Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002) ("a
contract will not be interpreted literally if doing so would produce absurd
results").

In short, there is only one reasonable interpretation of the Retiree
Life SPD incorporated into the 2019 CBA, and it supports Plaintiffs, not
Alcoa.

### b.  Alcoa's interpretation of the 2019 CBA language fails too.

Having explained how Alcoa's position cannot be reconciled with
the text or purpose of the Retiree Life SPD, we return to its arguments
about the "Recognition" provision and Retiree Health Care Letter, both
of which are easily addressed.

We start with the "Recognition" provision. Again, recall that Alcoa's
view is that the provision's "solely to [] employees" limitation excludes by

negative implication current retirees. But the provision actually states that the CBA applies "solely to those employees . . . *for whom the Union has been certified as the exclusive bargaining agency by the National Labor Relations Board, or for whom the Company has recognized the Union as the exclusive bargaining agency*." MSA.009 (emphasis added). And upon an employee's retirement, the union is *immediately* no longer his or her bargaining agency. *See Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 539-40 (7th Cir. 1997) (citing *Allied Chem. & Alkali Workers*, 404 U.S. at 172). That means that if the provision were intended to exclude retirees, as Alcoa suggests, it would exclude future retirees too, contrary to Alcoa's position. Thus, as the District Court reasoned, the better reading it is that it was intended to exclude not retirees of any stripe, but instead *employees* that were either non-union or from other plants. MSA.110-113.

That said, assuming *arguendo* that the "Recognition" provision *was* intended to exclude current retirees, that in and of itself cannot be dispositive. As Alcoa admits, the 2019 CBA *does* provide health benefits to current retirees. Thus, there is no reason that the same cannot be true of life insurance if the language of the agreement provides for it. As

discussed above, by incorporating the Retiree Life SPD, the 2019 CBA clearly does.

Alcoa's argument that the presence of the Retiree Health Care Letter and the absence of an "analogous life-insurance letter" indicates that life insurance benefits are *not* provided under the current CBA also fails. As explained, the Retiree Health Care Letter originated with the Cap agreement in 1993, when its purpose was not so much to affirmatively grant health benefits to post-1993 retirees as it was to ensure that those retirees' benefits would *not* be capped. *See* D.Ct. ECF No. 172 at 27-29. Given this unique history, the lack of a comparable letter for life insurance can be chalked up to the simple fact that the parties never agreed to a Cap on retiree life insurance. *See, e.g., United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 570 (1960) ("[w]ords in a [CBA] are to be understood only by reference to the background which gave rise to their inclusion") (Brennan, J. concurring). Indeed, in light of the overwhelming *similarities* between the contractual language in the Retiree Health SPD and the Retiree Life SPD issued years later, accepting Alcoa's interpretation based on nothing more than the absence of a retiree life insurance letter would constitute an error of law. *See*

*Diehl v. Twin Disc*, 102 F.3d 301, 308 (7th Cir. 1996) ("*expressio unius est exclusio alterius* . . . is at best an aid in interpretation, not a hard-and-fast rule"); *Stone*, 943 F.3d at 387-88 ("The principle that contracts should be interpreted to avoid rendering language superfluous or redundant is not absolute.").[3]

## B. Alcoa has no likelihood of success as to Voluntary life insurance.

Alcoa also has no likelihood of success with respect to the Voluntary life insurance claims.

Alcoa first claims, without support, that the "'continued for life' language is far too weak a basis to infer vested-for-life rights[.]" *See* Motion at p. 23. However, the District Court's interpretation of the "for life" language was fully consistent with *Diehl v. Twin Disc*. There, the Court of Appeals held that where the parties' "Shutdown Agreement" provided that retirees would receive benefits "for the lifetime of the

---

[3] Moreover, Alcoa's contention that the Retiree Health Care Letter would be surplusage if the "Group Insurance" provision referred to current retirees is conclusively refuted by the fact that the 2006 and 2010 Master Agreement CBAs, which likewise contained the same letter, explicitly provided Medicare Part B premium reimbursements for post-June 1, 1993 retirees in the "Group Insurance" provision. *See, e.g.,* D.Ct. ECF No. 102-19 at 58-59, 162 and ECF No. 102-22 at 60-61, 141.

pensioner," the language "must mean what it says: the retired employees shall be entitled to welfare benefits for their lifetime." *See Diehl*, 102 F.3d at 306. Thus, the retirees' rights unambiguously survived the termination of the time-limited Shutdown Agreement. *See id.* at 308. *See also Zielinski v. Pabst Brewing Co.*, 463 F.3d 615, 617-18 (7th Cir. 2006) (noting that in *Diehl*, the presumption that short term CBAs do not create "vested" rights "could not overcome the shutdown agreement's explicit provision of benefits 'for the lifetime of the pensioner'").

As it did below, Alcoa also argues that "continued for life" refers to the amounts of life insurance, not that the underlying "plan" would so continue. *See* Motion at p. 24. Alcoa also says that a "Converting to a Personal Policy" provision in the parties' SPD which contemplates that the "plan" could "end" or be "discontinued" is "inconsistent" with a lifetime right to benefits. *See id.* at p. 24-25 (MSA.041).

These arguments fail too. Alcoa cites no authority to support a meaningful distinction between continued "amounts" of coverage for life and a continued "plan" for life. And as for the "Converting to a Personal Policy" section, the SPDs make clear that the "plans" referenced therein are legal *entities* that provide a particular benefit. *See* MSA.042 ("The

Life Insurance and Sickness and Accident Benefits *are provided through* welfare benefit plans") (emphasis added). Here, retiring employees became entitled to continued insurance "coverage," not a particular "plan." MSA.038 ("If you're retired and age 65 or over, here's how your coverage works . . . [after 65, the reduced amounts of life insurance] are continued for life"). So long as retirees receive that "coverage," it does not matter what "plan" is used to provide it. In fact, the "plans" referenced in the 1993 SPDs *were* ended and replaced by new ones after a 2016 corporate reorganization, thus triggering the conversion rights in the provision Alcoa hangs its hat on. *See, e.g.,* D. Ct., ECF No. 44-5. Nevertheless, Alcoa continued to provide Voluntary life insurance coverage to Subclass members.

Alcoa's attempts to analogize the "Converting to a Personal Policy" provision to the reservation of rights in *Rockford Powertrain* falls flat too. *See* Motion at p. 25. Unlike there, here there is no language giving the company "the right to modify, amend, suspend or terminate them at any time." *See Rockford Powertrain*, 350 F.3d at 703. Thus, this is decidedly not a case where the parties' contracts "included both 'lifetime' language

and reservation-of-rights clauses expressly allowing alteration or termination of benefits." *See Stone*, 943 F.3d at 387.[4]

## C.    The remaining factors do not favor a stay.

The remaining *Nken* factors do not weigh in favor of granting a stay either. Alcoa will have to spend money to comply with the injunction, *see* Motion at pp. 8-10, but this does not *per se* warrant a stay, which is "not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433. This is particularly true given the *amount* of money Alcoa will have to spend: $269,397 in premiums/fees and just under $1.5 million in benefits. *See* Motion at p. 8. Given that Alcoa concedes that it could sue for the $1.5 million in benefits after the fact, only the former amount should be considered in connection with the "*irreparable* harm" analysis. *See id.* at p. 9. But even if the full amount *is* considered, it must be considered relative to the fact that Alcoa recently "[f]inished the third quarter 2025 with a cash balance of $1.5 *billion*[.]" https://news.alcoa.com/press-releases/press-release-details/2025/Alcoa-Corporation-Reports-Third-Quarter-2025-Results/default.aspx In other

---

[4] Likewise, this case is unlike *UMW v. Brushy Creek Coal Co.*, 505 F.3d 764, 767 (7th Cir. 2007) where the plan entitled the company "to terminate or alter the plan at any time[.]"

words, the amount of money Alcoa will have to spend is about one-tenth of one percent of its cash on hand.

On the other hand, for the beneficiaries and retirees, the continued deprivation of life insurance benefits cannot be so easily remedied by an award of prejudgment interest down the line. For living retirees who die during the appeal, their relatively modest benefits will be most useful to their beneficiaries if they can be used to cover funeral expenses, and that won't happen if the injunction is stayed. For the beneficiaries of those who have died and have already had to wait up to five plus years for their wrongfully denied benefits, the phrase "justice delayed is justice denied" comes to mind. *See Campos v. Cook Cty.*, 932 F.3d 972, 976 (7th Cir. 2019). And as for living retirees, the continued denial of the coverage to which they are entitled and the concomitant peace of mind it provides is a continued harm in and of itself.

Finally, the public interest weighs against a stay. As the District Court noted, there is a public interest in enforcing valid contracts. MSA.177.

## V.    CONCLUSION

Alcoa's motion should be denied.

Dated:  December 1, 2025          Respectfully submitted,

    *s/  Joel R. Hurt*
      Joel R. Hurt

**FEINSTEIN DOYLE PAYNE**
   **& KRAVEC, LLC**
Joel R. Hurt
    *Counsel of Record*
Ruairi McDonnell
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
jhurt@fdpklaw.com
rmcdonnell@fdpklaw.com

***Counsel for Plaintiffs-Appellees***

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT AND<br>TYPEFACE REQUIREMENTS</u>

This brief complies with the word count and typeface requirements of Federal Rule of Appellate Procedure 27 because it contains 5196 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) as calculated by Microsoft Office Word, and has been prepared in a proportionally spaced typeface using 14-Point Century Schoolbook Style font.

Date:  December 1, 2025

*s/ Joel R. Hurt*
Joel R. Hurt

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25 and Circuit Rule 25, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the Court's CM/ECF system on December 1, 2025 which will effect service on all counsel of record.

Date:  December 1, 2025            *s/ Joel R. Hurt*
                                        Joel R. Hurt

                                    *Counsel for Plaintiffs-Appellees*