No. 25-2635

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**EDMOND M. BUTCH, CHARLES R. WYATT, DANIEL A. HENRY, and ROBERT H. CROW, on behalf of themselves and all other persons similarly situated; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC; and ALUMINUM TRADES COUNCIL OF WENATCHEE, WASHINGTON AFL-CIO,**

*Plaintiffs-Appellees*,

*v.*

**ALCOA USA CORP.; RETIREES GROUP BENEFIT PLAN FOR CERTAIN HOURLY EMPLOYEES OF ALCOA USA CORP.; and OPTIONAL LIFE INSURANCE PLAN,**

*Defendants-Appellants.*

Appeal from the United States District Court for the Southern District of Indiana, No. 3:19-cv-258-RLY-CSW

## DEFENDANTS-APPELLANTS'
## REPLY IN SUPPORT OF MOTION TO STAY

David T. Raimer
  *Counsel of Record*
Bijan M. Aboutorabi
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001-2113
(202) 879-3939
dtraimer@jonesday.com

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii
INTRODUCTION ................................................................................................ 1
ARGUMENT ........................................................................................................ 2
    I.    THE EQUITIES REMAIN LOPSIDED. ............................................. 2
    II.   ALCOA IS LIKELY TO PREVAIL ON APPEAL. ............................. 4
        A.    Alcoa Is Likely to Prevail Regarding the Main Class. ................................................................................... 5
            1.    Plaintiffs fail to rehabilitate the district court's errors. ..................................................... 5
            2.    Plaintiffs' alternative rationale cannot save the decision below. .............................................. 7
        B.    Alcoa Is Likely to Prevail Regarding the Subclass. ... 13
CONCLUSION .................................................................................................. 15
CERTIFICATES OF COMPLIANCE AND SERVICE .......................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*,
    404 U.S. 157 (1971) ................................................................................ 6

*Bank of Com. v. Hoffman*,
    829 F.3d 542 (7th Cir. 2016) ................................................................ 11

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) .................................................................. 2

*Diehl v. Twin Disc, Inc.*,
    102 F.3d 301 (7th Cir. 1996) ................................................................ 13

*Lid Elec., Inc. v. IBEW*,
    362 F.3d 940 (7th Cir. 2004) .................................................................. 6

*M&G Polymers USA, LLC v. Tackett*,
    574 U.S. 427 (2015) ................................................................................ 4

*Stone v. Signode Indus. Grp.*,
    943 F.3d 381 (7th Cir. 2019) .................................................................. 6

*Thompson v. Amoco Oil Co.*,
    903 F.2d 1118 (7th Cir. 1990) .............................................................. 10

*United Mine Workers v. Brushy Creek Coal Co.*,
    505 F.3d 764 (7th Cir. 2007) ................................................................ 14

*USW v. NLRB*,
    544 F.3d 841 (7th Cir. 2008) ................................................................ 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 62(b) ....................................................................................... 1

# INTRODUCTION

Nothing in Plaintiffs' opposition makes this anything but a textbook case for a stay pending appeal.

*First*, as Plaintiffs effectively concede, Opp.24-25, the equities are lopsided. Alcoa faces undisputed irreparable harm avoidable only by staying the injunction below, plus damages-in-all-but-name that would be stayable *as of right* with a different label and a bond Alcoa is willing to post. Fed. R. Civ. P. 62(b). Conversely, if a stay is granted but Alcoa's appeal fails, "everyone entitled to the insurance benefit will still receive it," with interest. MSA.176; Mot.8-11.

*Second*, this Court will likely reverse the decision below. Straightforward labor- and contract-law principles dictate summary judgment for Alcoa or (at worst) a determination that the relevant CBAs are ambiguous. Mot.11-26. The district court held otherwise only by construing those CBAs contrary to not one, but two, default rules. *Id*. Plaintiffs' insistence that Alcoa has "*no* likelihood of success" in such circumstances beggars belief. Opp.1. Indeed, even the district court admitted Alcoa's "chances are not zero." MSA.177.

Simply put, there is no reason to force Alcoa to pay nearly $1.7 million for the privilege of pursuing an appeal. The one-sided equities and Alcoa's *at least* substantial likelihood of success warrant a stay to avert undisputed irreparable harm.

## ARGUMENT

### I.　THE EQUITIES REMAIN LOPSIDED.

As the district court agreed, the equities unambiguously favor a stay. Mot. 8-11. Plaintiffs barely argue otherwise.

*First*, Plaintiffs admit that Alcoa faces irreparable harm, satisfying the basic requirement for interim relief. Opp.24. Plaintiffs downplay that harm, *id.*, but the threshold "analysis focuses on irreparability, 'irrespective of … magnitude,'" *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).

*Second*, Plaintiffs fail to rebut the finding that they "will not be substantially harmed" by a stay. MSA.177. The balance is clear-cut. Without a stay, Alcoa must expend nearly $1.7 million before its appeal is decided—some of it wholly unrecoverable, some of it recoverable only by demanding reimbursement from (or filing suit against) class members' beneficiaries. Mot.8-9. Conversely, even with a stay, "everyone entitled

2

to the insurance benefit will still receive it if Alcoa is unsuccessful." MSA.176. Plaintiffs frame temporary delay in payment, even with interest, as substantial harm. Opp.25. But they ignore that damages—from which this pay-money injunction is indistinguishable—are *always* stayable with a bond, which, again, Alcoa will post if required. Mot.9-10.[1]

*Third*, Plaintiffs are callous to the risk of turning deceased class members' beneficiaries into Alcoa's debtors. Mot.8-9; MSA.176-77. If Alcoa wins this appeal after paying nearly $1.5 million to 100-plus beneficiaries, it will have only two bad options: (1) treat the payments as lost, adding them to Alcoa's never-to-be-redressed harms, *contra* Opp.24; or (2) demand beneficiaries return money they may have spent, which could require numerous "inconvenient and costly" individual actions. MSA.176. Option one would compound the inequity to Alcoa; option two could recover some of its losses, but at serious costs to third parties.

---

[1] Similarly, Plaintiffs' claim about when payments "will be most useful" is sheer speculation, and their "peace of mind" point ignores that, with or without a stay, the outcome of this dispute remains undetermined. Opp.25.

There is no reason to put Alcoa to that choice, when all this can be avoided by a stay.

## II.  ALCOA IS LIKELY TO PREVAIL ON APPEAL.

Lacking arguments on the equities, Plaintiffs insist Alcoa has "*no likelihood of success*" on the merits. Opp.1. But Alcoa's challenged actions—terminating life-insurance benefits for individuals who retired under long-expired CBAs—were *presumptively lawful*. *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434-45, 441-42 (2015). As Alcoa explained, the court reached a contrary conclusion only by embracing snowballing errors of law and logic. Mot.11-26. At minimum, Alcoa's arguments demonstrate that it violated no *unambiguous* obligations. That reality, paired with the undisputed equities, alone warrants a stay.

Plaintiffs' response is notably light on direct defenses of the district court's reasoning. Indeed, Plaintiffs offer *an entirely different rationale* for the court's conclusion. Far from suggesting Alcoa is unlikely to prevail, that Plaintiffs felt the need to present their own theory of the case underscores the weakness of the decision below.

### A. Alcoa Is Likely to Prevail Regarding the Main Class.

#### 1. Plaintiffs fail to rehabilitate the district court's errors.

The district court held that the 2019 Massena/Warrick CBA unambiguously promised company-paid life-insurance benefits to Main Class members—all of whom retired *before* that CBA was negotiated while working at a broader range of facilities. MSA.105-13. That contravened black-letter labor law on the scope of collective bargaining—which is presumptively limited to the rights of *active* employees—and the CBA's Recognition clause—which extended the agreement's promises only to "employees" at the Massena/Warrick facilities. Mot.12-19.

Nonetheless, the district court decided that the 2019 CBA's promises to "retirees" applied equally to both (1) future Massena/Warrick retirees (whose benefits were a mandatory bargaining subject) and (2) all other existing retirees (to whom the 2019 CBA ordinarily would not speak at all). MSA.106-07; Mot.17. To accommodate that far-from-obvious conclusion, the court rewrote the Recognition clause and rendered the Retiree Health Care Letter—the single instance where the CBA clearly *does* promise benefits to existing retirees—entirely superfluous. Mot.15-18.

In short, the district court's fundamental error was ignoring the basic labor-law distinction between *future* retirees and *existing* retirees. Plaintiffs largely fail to engage with this essential point.

*First*, Plaintiffs quibble with *Stone v. Signode Industrial Group*'s articulation of the "general rule" that a CBA "covers only those who retire while it is still in effect." 943 F.3d 381, 388 (7th Cir. 2019); Opp.8-10. This is obfuscation. *Stone*'s facts aside, the "general rule" is merely a convenient distillation of *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971)—as Plaintiffs effectively concede a few lines later, Opp.9 (CBAs "*may*," but "*generally* do not[,] grant benefits to those who retired before [they] became effective"). In other words, while the rights of active employees (including future retirement benefits) are a "mandatory" subject of bargaining, the parties must agree to take on the "permissive" subject of existing-retiree benefits. Mot.12-13; *Lid Elec., Inc. v. IBEW*, 362 F.3d 940, 943 (7th Cir. 2004). This is the interpretive framework through which the 2019 CBA must be read. *Contra* Opp.9 (deeming Alcoa's arguments divorced from "contractual language"). And viewed through that lens, there is no indication that CBA says anything about existing retirees' life-insurance benefits.

6

Mot.13-17.

*Second*, Plaintiffs defend the court's attempt to gin up a contradiction between Alcoa's interpretation of the Recognition clause and the CBA's promise of benefits to future retirees. Opp.19. But as Alcoa explained, that conflict arises only if one ignores that "'future retirement benefits of active workers'" (unlike existing-retiree benefits) are a mandatory bargaining subject. Mot.17-18.

### 2. Plaintiffs' alternative rationale cannot save the decision below.

The rest of Plaintiffs' Main Class argument relates to the 2013 Retiree Life Insurance SPD. Opp. 11-18. But Plaintiffs' reliance on that document has only a passing resemblance to the district court's. While the court used that SPD to define "eligible," Plaintiffs invoke a "Future of the Plan" provision, Opp.5, 13-14, unmentioned in the decision below, MSA.105-13. Going even further afield, Plaintiffs repeatedly emphasize a separate "Retiree Health SPD" (mentioned only glancingly by the court below, MSA.108), which they read in conjunction with the Retiree Health Care Letter. Opp.3-6, 12-14, 17-18. These elaborate efforts to salvage the decision below are unavailing.

**a.** To start, as Alcoa explained, the 2013 Retiree Life Insurance

SPD has no direct relevance to Plaintiffs' theory. ERISA requires Alcoa to periodically provide SPDs to participants, including retirees, independent of any CBA obligations. Mot.19. The primary purpose of an SPD is to *describe* benefits. And for simple chronological reasons, a *2013* summary of benefits cannot control whether bargaining parties permissively negotiated in *2019* to extend those benefits. *Id.*

Ignoring these points, Plaintiffs treat every word of each retiree SPD as an integral part of the 2019 CBA. But, as explained, the retiree-focused SPDs are not incorporated in the same way as active-employee SPDs—because they addressed individuals who had retired under many different CBAs (some of which would be expired). Mot.19-20. Plaintiffs' arguments about the impossibility of "retrospective[] incorporat[ion]," and their insistence that incorporation must be all-or-nothing, Opp.12-13, require closing one's eyes to *why* the retiree SPDs were provided: to describe benefits initially guaranteed by many different CBAs that Alcoa was continuing to provide (sometimes, even after those CBAs expired). Mot.19.

Further, Plaintiffs' core assumption—that the 2019 CBA incorporated the retiree SPDs—is far from obvious. Incorporation can be

8

viewed from two perspectives: the CBA's and the SPD's. Alcoa focused on the latter when explaining that the 2013 SPD—on its own terms—is incorporated only into the CBA under which an individual retired (which, for Main Class members, cannot be the 2019 CBA). Mot.21. Looking at the matter the other way does not help Plaintiffs: the 2019 CBA's incorporation language states only that "[s]eparate booklets describing these benefits are incorporated herein and made a part of this Agreement." MSA.012. As discussed, the preceding benefits promises did not extend to existing retirees, Mot.14-16, so SPDs addressed solely to that population would not be ones "describing th[o]se benefits."

Regardless, even if "incorporated" in some sense, the Retiree Life Insurance SPD assumes the general rule that retirees' benefits were governed by the CBAs they retired under. Mot.20-21. Plaintiffs do not seriously dispute Alcoa's reading of the eligibility provisions; they merely observe that those provisions do not preclude later CBAs from promising benefits to existing retirees. Opp.16-17. That is true; if the 2019 CBA had life-insurance language analogous to the Retiree Health Care Letter, it would have done so. However, no such language exists.

Nothing is changed by the "Future of the Plan" provision, whose

9

language ("the collective bargaining agreement," MSA.088) naturally refers to the same individual CBA identified in the eligibility provisions. *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 (7th Cir. 1990); Mot.20-21. Plaintiffs seem to think the provision means that *every* retiree, from *every* facility, is guaranteed benefits for the duration of whatever CBA, for whatever facility, happens to be in effect. Opp.5-6, 12-15. This strained, auto-updating interpretation ignores the rest of the SPD and jams an enormous elephant into the tiniest mousehole: if the parties meant to guarantee ongoing life-insurance benefits, this would be an exceedingly odd way to do so.[2]

**b.** All that said, these SPD word games are a sideshow. The real reason Plaintiffs bounce between the Retiree Life Insurance SPD, the Retiree Health SPD, and the Retiree Health Care Letter, is their hope of tying the Main Class's life-insurance benefits to the Main Class's *healthcare* benefits. Put simply, Plaintiffs' theory is that, since the 2019 CBA secured the Main Class's healthcare benefits, it likewise secured

---

[2] Nor is there anything problematic about the provision's present-tense language to describe benefits Alcoa *was then providing* or its shorthand use of "Alcoa Inc." to include relevant predecessors. *Contra* Opp.13-14.

10

life-insurance benefits. *E.g.*, Opp. 3-4, 9-10, 19-20.

Of course, the correct inference is the exact opposite. The 2019 CBA secured healthcare benefits only because the Retiree Health Care Letter required Alcoa to "maintain its program of medical and prescription drug benefits" for the Main Class. MSA.016-24. This provision made an exception to the default rule and the Recognition clause, but only for healthcare. *See Bank of Com. v. Hoffman*, 829 F.3d 542, 548 (7th Cir. 2016); *USW v. NLRB*, 544 F.3d 841, 859 n.10 (7th Cir. 2008). The 2019 CBA contains no comparable life-insurance language, so it made no similar life-insurance promise. MSA.016-24; Mot.15. Different language, different results—nothing could be simpler.

Recognizing this problem, Plaintiffs downplay the Letter as a bargaining-history relic. Opp.3, 13, 20. But that history debunks any attempt to put healthcare and life-insurance benefits on the same plane. As a condition of the union's agreement to the "Cap," the Main Class's healthcare benefits have been a *mandatory* bargaining subject since 1993. MSA.022; MSA.048-53. There was no similar agreement regarding existing-retiree life-insurance benefits—which, therefore, remained a *permissive* subject. MSA.067; MSA.093. Thus, while the parties

11

necessarily bargained in 2019 over the Main Class's healthcare benefits, there is no reason to believe they similarly bargained over existing-retiree life-insurance benefits.

Given all this, Plaintiffs again resort to obfuscation. To that end, they repeatedly (1) conflate the Retiree Health Care Letter with language in the Retiree Health SPD; (2) point to similar language in the Retiree Life Insurance SPD; and (3) insinuate that the Retiree Life Insurance SPD therefore secured life-insurance benefits just as the Retiree Health Care Letter secured healthcare benefits. Opp.5-6, 13-14, 17-18.

This triple-bank-shot fails at the outset, because there is no reason to equate the Retiree Health Care Letter with any Retiree Health SPD language. The Letter, not the SPD, promised the Main Class healthcare benefits. MSA.016. If Alcoa had terminated *those* benefits, Plaintiffs would prove breach by citing the Letter; the Retiree Health SPD would add nothing. The only reason Plaintiffs point to the Retiree Life Insurance SPD here is the absence of any Retiree *Life Insurance* Letter. And the only reason they drag the Retiree Health SPD into this life-insurance case is to build a contrived bridge between the Retiree Life Insurance SPD and the Retiree Health Care Letter—the only document

12

creating the type of obligation allegedly breached here.

Plaintiffs' convoluted arguments thus founder on the plain text of the 2019 CBA. That CBA secured the Main Class's healthcare benefits via the Retiree Health Care Letter; it did not similarly secure the Main Class's life-insurance benefits because it contains no analogous life-insurance provision. Plaintiffs' position—that the "presence" or "absence" of the Retiree Health Care Letter makes *zero* difference to contractual meaning, Opp.20, *or even ambiguity*, Opp.6—cannot be taken seriously.

### B. Alcoa Is Likely to Prevail Regarding the Subclass.

Regarding the Subclass, Plaintiffs do not dispute (1) that welfare-benefits obligations generally expire with CBAs, or (2) that the decision below rested on an expired 1993 CBA's incorporation of an SPD's insurance-amount schedule indicating that certain amounts would be "continued for life." Mot.22-23. Alcoa explained why that did not mean that the plan was promised forever—let alone unambiguously. Mot.23-26. Plaintiffs' limited rebuttals fail.

*First*, Plaintiffs summarize *Diehl v. Twin Disc, Inc.*, where "explicit" language "unambiguously granted lifetime benefits." 102 F.3d 301, 306-07 (7th Cir. 1996); Opp.21-22. Here, that is not so. Mot.23-26. The "for

13

life" SPD language reasonably could (and, in context, clearly does) mean only that certain amounts "go on regardless of … age" so long as the plan continues. *United Mine Workers v. Brushy Creek Coal Co.*, 505 F.3d 764, 767 (7th Cir. 2007).

*Second*, Plaintiffs fail to explain away the conversion clause, which expressly contemplates the plan's "end." Mot.24-25. Rather than defend the district court's atextual response, Mot.25 n.8, Plaintiffs conjecture that "coverage" was vested, not a specific "plan," Opp.22-23. But that cannot be squared with their vesting theory, which depends on an incorporated SPD describing a particular plan. MSA.026-42.[3]

*Third*, Plaintiffs fall back on the absence of explicit reservation-of-rights language. Opp.23-24. Alcoa explained why this does not matter, Mot.26, and Plaintiffs have no substantive counterargument—much less any defense of the district court's precedent-defying shortcut to *unambiguous* vesting as a matter of law. MSA.119-20; Mot.25-26.

---

[3] Alcoa's "2016 corporate reorganization" is another distraction. Opp.23. It merely "allocated" already-existing "obligations" among different entities. D.Ct. ECF No. 44-5 at 5.

*Finally*, Plaintiffs do not even try to justify the illogical application of the court's analysis to Subclass members who retired under CBAs *without* the "for life" language.  Mot.22 n.7.

## CONCLUSION

This Court should stay the injunction pending appeal.

Dated:  December 8, 2025　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ David T. Raimer*
　　　　　　　　　　　　　　　　　　　David T. Raimer
　　　　　　　　　　　　　　　　　　　　*Counsel of Record*
　　　　　　　　　　　　　　　　　　　Bijan M. Aboutorabi
　　　　　　　　　　　　　　　　　　　JONES DAY
　　　　　　　　　　　　　　　　　　　51 Louisiana Avenue, NW
　　　　　　　　　　　　　　　　　　　Washington, DC  20001-2113
　　　　　　　　　　　　　　　　　　　(202) 879-3939
　　　　　　　　　　　　　　　　　　　dtraimer@jonesday.com

　　　　　　　　　　　　　　　　　　　*Counsel for Defendants-Appellants*

## CERTIFICATES OF COMPLIANCE AND SERVICE

Pursuant to Federal Rules of Appellate Procedure 27(d)(1)(E) and 27(d)(2)(A), I certify that the foregoing reply is proportionately spaced, has a type-face of 14 points, and contains 2,596 words, as calculated by Microsoft Word for Microsoft 365.

I certify that on December 8, 2025, I caused the electronic filing of the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all counsel of record are users of the appellate CM/ECF system and will be served by that system.

Dated: December 8, 2025      Respectfully submitted,

*/s/ David T. Raimer*
David T. Raimer

*Counsel for Defendants-Appellants*